As has already been stated, I think that, upon both branches of the case upon which negligence was charged against the defendant, there was sufficient evidence to submit the case to the jury. But even if the best appliances and the best machines had been used for cleaning the oat hulls and freeing them from foreign substances, yet if the defendant was negligent in permitting the dust to accumulate in the bins and mill, so as to endanger the safety of the workmen, that alone was sufficient to charge the defendant with such want of care as to subject it to liability for the consequences of the explosion, assuming, of course, that the plaintiff's case was made out in other respects.

I think the judgment should be affirmed.

SPRING, J., concurs.

---

### LANGDON v. NORTHWESTERN MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

INSURANCE—CONTRACT—PROSPECTUS—SUBAGENT—AUTHORITY.

Defendant's subagent solicited a semitontine policy from complainant, delivering a writing containing a statement of the great results which might happen in case insurance in defendant company was applied for, one of the statements being that the policy would return double the annual cash dividend of any other company writing that kind of a policy, and that the options at the termination of the accumulation period could not fail to meet the "circumstances of the insured." Plaintiff's written application for the policy stated that he understood that no representations of the subagent should be binding on insurer, unless reduced to writing and presented to the officers of the company at its home office. The application and the policy provided that the agents were not authorized to waive forfeitures, or make, alter, or discharge contracts, and that the dividend accruing thereon at the end of the accumulation period was contingent, etc. *Held*, that the written representation was a mere prospectus, and not a part of the contract which consisted of the application and the policy, and was insufficient to charge the insurer with liability to pay the estimated accumulation dividends.

Appeal from Equity Term, Erie County.

Action by Andrew Langdon against the Northwestern Mutual Life Insurance Company. From a judgment directing that plaintiff was entitled to a paid-up life insurance policy in defendant company for the sum of $30,000 and to recover $29,601.76 damages and costs, defendant appeals. Modified and affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and NASH, JJ.

Allan McCulloh (Tracy C. Becker, of counsel), for appellant.
James McCormick Mitchell, for respondent.

McLENNAN, P. J. We are satisfied that the facts found by the learned Trial Court are practically correct, and therefore need not be repeated in this opinion. Upon such facts the question is presented: May a subagent of a life insurance company, in direct violation of his instructions in that regard, make a contract binding upon such company, which is in one or more of its essential features at variance

with the terms of a contract resulting from the application of the insured made in the usual form, and the policy issued in response to or in accordance with such application? And especially where the contract issued in pursuance of such application was accepted and retained by the applicant without objection for 11 years, and where concededly the alleged contract, resulting independent of the application and the policy issued thereon, was not brought to the attention of the insurance company during such period. We conclude under the evidence and circumstances disclosed in this case that the paper, Exhibit A, should be regarded to be simply an estimate or representation as to what the policy solicited would yield in case the annual premiums were paid in full, and in case the insured survived the 15-year tontine period. We think it should not be held that the alleged contract, Exhibit A, superseded the application for insurance and the policy issued in pursuance thereof, and gave to the insured a definite and fixed amount of surplus irrespective of the provisions contained in the policy. Such a construction would work an injustice to the other parties to the tontine plan. The whole scope and purpose of such semitontine policy is such that the amount of surplus to be applied to any particular policy is uncertain, and upon the face of the alleged special agreement he knew the amount of surplus was uncertain, and was simply an estimate of what such policy would be worth at the end of the tontine period.

But, wholly independent of that consideration, the plaintiff made an application for insurance in the defendant company in the regular and ordinary way. In and by such application he stated, in substance, that he understood "that no statements, representations, or information made to or given by or to the person soliciting or taking the application for a policy, or to any other person, shall be binding upon the company, or in any manner affect its rights, unless such statements, representations, or information be reduced to writing, and presented to the officers of the company at the home office in this application." He received and accepted a policy upon which was indorsed: "Agents are not authorized to waive forfeitures, or to make, alter, or discharge contracts." Yet, notwithstanding his answer in the application and notwithstanding the receipt by him of a policy issued pursuant to the application made by him, and upon which was indorsed the statement above quoted, it is urged that such application and policy do not control and govern the rights of the parties, but rather that they are to be ascertained by virtue of the alleged "special contract" delivered to the insured by the subagent. The rights of the parties should be determined under and by virtue of the application for insurance made by the plaintiff, which is clear and unambiguous, and the policy issued in pursuance thereof, which was received and accepted by the plaintiff and retained by him for a period of at least 11 years without complaint.

It is apparent upon the face of Exhibit A that it was in effect only a prospectus, a statement of the great results which might happen in case insurance in the defendant company was applied for; one of the statements being "that said policy in the Northwestern will return

double the annual cash dividend of any other company writing this kind of policy." Another of the statements was to the effect that "the options at the termination of the accumulative period cannot fail to meet the circumstances of the insured." In addition, it is apparent that the plaintiff knew or must be presumed to have known that under the terms of a semitontine policy the amount of surplus could not have been known in advance, and could not have been thus agreed to be paid without doing injustice to others in such class. If the subagent in the case at bar was authorized under the circumstances' to make a binding contract compelling the defendant to pay a fixed sum of $25,810.80 as the surplus belonging to him as one of the semitontine class of the defendant, he could as well have guarantied an amount of surplus to the plaintiff sufficient to absorb the entire sum applicable to the persons so interested in said class.

The respondent's contention is in effect that a subagent of an insurance company, in violation of his instructions, may make a contract without the knowledge of the insurance company which will prevent such company from carrying out its agreement with a class which it has undertaken to insure. In other words, an insurance company agrees under the tontine plan of insurance, which is well recognized, that all persons who become parties to such plan of insurance may enjoy and participate in the fruits of the same, provided they survive the tontine period. The contention of the respondent practically abrogates such rule by suggesting that a subagent of such company may make a contract in violation of his authority and instructions, which shall take the place of the application made by the insured in the ordinary way and of the policy of insurance issued thereon. The subagent, Whitney, as found by the trial court, had no authority to make Exhibit A as between himself and the defendant. We think there is nothing in the evidence to indicate that he had implied authority to make the alleged contract in question, Exhibit A. Assuming that he had authority to make a contract in that regard, the evidence conclusively shows that the figures inserted therein were a matter of computation, and were not such as were definitely authorized by the defendant. Clearly Exhibit A was a prospectus or a representation as to what an application for a policy in the defendant company would produce. The trial court has found that no fraud was perpetrated in making such representations, and has not found that there was any mutual mistake as to the facts. Therefore we must assume that the application for a policy and the policy issued thereon constituted the contract between the parties, into which all prior negotiations and agreements were merged.

It is considered that there was no consideration for the "special contract" claimed to have been issued by the defendant; also that, whatever the nature of the agreement, it was merged in and superseded by the contract evidenced by the application for and the policy issued in pursuance thereof, and therefore that such contract, to wit, that constituted by the application and policy, was not modified or changed because of any other alleged arrangement or agreement. We are constrained to hold that the application for the policy in this case and

the policy issued in response to such application constituted the contract or agreement between the parties and absolutely determined their rights, irrespective of Exhibit A.

It follows that the judgment appealed from should be modified so as to provide that the amount of surplus which the plaintiff is entitled to recover is the sum of $14,609.34, with interest thereon from the 28th day of February, 1904, and that the judgment, as so modified, should be affirmed, with costs in the court below and of this appeal to the appellant. All concur, except KRUSE, J., not sitting.